UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
JENNIFER SUAREZ ON BEHALF OF MINOR    :
SON C.L.S.,
                                      :
              Plaintiff,                       REPORT & RECOMMENDATION
                                      :        20 Civ. 6559 (KPF) (GWG)
       -against-
                                      :

COMMISSIONER OF SOCIAL SECURITY,      :

              Defendant.              :
------------------------------------------------------------------X
**GABRIEL W. GORENSTEIN, United States Magistrate Judge:**

Plaintiff Jennifer Suarez brings this action pursuant to 42 U.S.C. § 405(g) for judicial

review of the final decision of the Commissioner of Social Security (the "Commissioner")

denying her son's claim for supplemental security income ("SSI") benefits under the Social

Security Act (the "Act").  The Commissioner has moved for judgment on the pleadings and

dismissal pursuant to Fed. R. Civ. P. 12(c).[1]  Suarez has not filed any opposition to the

Commissioner's motion.  For the reasons stated below, the Commissioner's motion for judgment

on the pleadings should be denied.

I.  BACKGROUND

   A.  Procedural Background

Jennifer Suarez filed for disability benefits on behalf of her minor son, C.L.S., on May 9,

2017.  See SSA Administrative Record, filed May 4, 2021 (Docket # 31), at 53 ("R.").  Her

application was denied on June 20, 2017, R. 54, and Suarez filed a request for a hearing before

an Administrative Law Judge ("ALJ") on June 27, 2017, see R. 60.  A hearing was held before

---

[1]  Motion for Judgment on the Pleadings, filed May 4, 2021 (Docket # 32) ("Def. Mot.");
Memorandum of Law in Support, filed May 4, 2021 (Docket # 33) ("Def. Mem.").

an ALJ on January 2, 2019.  R. 30, 79, 98.  On April 29, 2019, the ALJ found C.L.S. was not

disabled.  <u>See</u> R. 9-25.  Suarez requested the Appeals Council review the ALJ's decision.

R. 102.  The Appeals Council denied this request on May 4, 2020, making the ALJ's decision

final.  R. 1-3.

Suarez filed the complaint in this action on August 11, 2020, proceeding <u>pro se</u>.  (Docket

# 2).  The complaint originally listed C.L.S. as the plaintiff, <u>see</u> <u>id.</u>, but after the Court was

alerted to C.L.S.'s minor status (<u>see</u> Docket # 18), Suarez filed a proposed amended complaint

naming herself as the plaintiff on behalf of her minor son (<u>see</u> Docket # 19).  The amended

complaint was filed on January 20, 2021.  (Docket # 24).

The Commissioner filed a motion for judgment on the pleadings on May 4, 2021.  <u>See</u>

Def. Mot.  Suarez's opposition was due July 2, 2021.  <u>See</u> Order, filed March 1, 2021 (Docket

# 30).  However, Suarez failed to file any opposition by this date.  The Court therefore ordered

Suarez "to file a letter . . . stating whether she intends to pursue this case or to oppose the

defendant's motion."  Order, filed July 7, 2021 (Docket # 37).  Suarez filed a letter on July 14,

2021, explaining the delay and requesting a two-month extension to respond in order to find

counsel.  (Docket # 38).  The Court granted Suarez's request but warned that it would "not grant

any further extensions."  Memo Endorsement, filed July 15, 2021 (Docket # 39).   Suarez never

filed any opposition to the motion.

    B.  <u>The Hearing Before the ALJ</u>

The hearing was held in Bronx, New York where Suarez and C.L.S. appeared in person

and without counsel.  R. 9.

The ALJ began by explaining that C.L.S. "has a right to an attorney or legal

representative in th[e] hearing."  R. 32.  The ALJ asked Suarez if she would like to adjourn the

hearing and postpone it to a later date in order to find an attorney, see R. 33, but Suarez ultimately opted to proceed with the hearing without representation, see R. 33-34.

Suarez testified that C.L.S. had been getting medical treatment from Montefiore for his ADHD for "about two years." R. 35. C.L.S. was also taken out of class for "specialized sessions" in school, R. 36, and had been held back once in second grade, R. 39. At the time of the hearing C.L.S. was attending One World Middle School, R. 38, and was "doing okay," R. 39. Suarez explained that C.L.S. was "just passing . . . with 70s and 65s." Id.

C.L.S. was taking 20 milligrams of Adderall for his ADHD and had been taking Adderall for about a year at the time of the hearing. R. 39-40. Suarez explained that she had seen a "[s]light[]" improvement in C.L.S.'s attentiveness but believed "it[] still needs more balancing." R. 40. Suarez estimated there had been a "20 percent improvement" in his attentiveness, but only a 10 percent improvement in his ability to "pay attention to things." Id. Suarez also explained that C.L.S. only did well with learning when he was interested in what he was learning about. R. 40-41.

Suarez testified that C.L.S. got along "[f]ine" with other kids but that he was "shy, timid" and "doesn't like to speak often." R. 41. C.L.S. had no problem caring for himself and did not have any health issues other than his ADHD. Id. At home C.L.S. would take his toys apart and try to put them back together. He also would not do his chores without Suarez "constantly" reminding him. Id.

C.  The Medical Evidence

The Commissioner has provided a summary of the medical and education evidence. See Def. Mem. at 4-10. The Court had directed Suarez to specify any objection she had to the Commissioner's summary of the record, see Scheduling Order, filed October 30, 2020 (Docket

# 16) ¶ 3, and Suarez has not done so.  Accordingly, the Court adopts the Commissioner's summary of the medical and education evidence as accurate and complete for purpose of the issues raised in this suit.  We discuss the medical and education evidence pertinent to the adjudication of this case in Section III below.

### D.  The ALJ's Decision

The following is a summary of the ALJ's decision.

C.L.S. was born July 4, 2005.  R. 12.  C.L.S. was therefore "a school-age child on May 9, 2017, the date [the] application was filed," and an adolescent on April 29, 2019, the date of the ALJ's decision.  R. 12, 25.  The ALJ found that C.L.S. had "not engaged in substantial gainful activity since May 9, 2017," and had "the following severe impairments: ADHD and speech and language delays."  R. 12.  However, the ALJ determined that C.L.S. did "not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1."  Id.

The ALJ made findings regarding the six domains of functionality.  See R. 13-25.  The ALJ found C.L.S. has a marked limitation in attending and completing tasks, R. 16-18; a less than marked limitation in acquiring and using information, R. 14-16, and interacting and relating with others, R. 19-20; and no limitation in moving about and manipulation objects, R. 21-22, the ability to care for himself, R. 23, and health and physical well-being, R. 24-25.

## II.  APPLICABLE LAW

### A.  Scope of Judicial Review Under 42 U.S.C. § 405(g)

A court reviewing a final decision by the Commissioner "is limited to determining whether the [Commissioner's] conclusions were supported by substantial evidence in the record and were based on a correct legal standard."  Selian v. Astrue, 708 F.3d 409, 417 (2d Cir. 2013)

(per curiam) (punctuation omitted); accord Greek v. Colvin, 802 F.3d 370, 374-75 (2d Cir. 2015)

(per curiam); see generally 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social

Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). "Even

where the administrative record may also adequately support contrary findings on particular

issues, the ALJ's factual findings must be given conclusive effect so long as they are supported

by substantial evidence." Genier v. Astrue, 606 F.3d 46, 49 (2d Cir. 2010) (per curiam)

(punctuation omitted). Thus, "[i]f the reviewing court finds substantial evidence to support the

Commissioner's final decision, that decision must be upheld, even if substantial evidence

supporting the claimant's position also exists." Johnson v. Astrue, 563 F. Supp. 2d 444, 454

(S.D.N.Y. 2008) (citing Alston v. Sullivan, 904 F.2d 122, 126 (2d Cir. 1990)).

Importantly, it is not a reviewing court's function "to determine de novo whether [a

claimant] is disabled." Schaal v. Apfel, 134 F.3d 496, 501 (2d Cir. 1998) (punctuation omitted);

accord Cage v. Comm'r of Soc. Sec., 692 F.3d 118, 122 (2d Cir. 2012), cert. denied, 570 U.S.

919 (2013). Rather, substantial evidence is "more than a mere scintilla." Richardson v. Perales,

402 U.S. 389, 401 (1971) (punctuation omitted) (quoting Consol. Edison Co. v. N.L.R.B., 305

U.S. 197, 229 (1938)); accord Greek, 802 F.3d at 375; Burgess v. Astrue, 537 F.3d 117, 127-28

(2d Cir. 2008). "It means — and means only — such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion." Biestek v. Berryhill, 139 S. Ct. 1148, 1154

(2019) (punctuation omitted). The "threshold for such evidentiary sufficiency is not high." Id.

The Second Circuit has held that "[t]he substantial evidence standard means once an ALJ finds

facts, [a court] can reject those facts only if a reasonable factfinder would have to conclude

otherwise." Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam)

(emphasis in original, punctuation omitted). "The role of the reviewing court is therefore quite

limited and substantial deference is to be afforded the Commissioner's decision." Johnson, 563

F. Supp. 2d at 454 (punctuation omitted).

B.  Legal Standard Governing Evaluation of Disability Claims for Children

To qualify for SSI, a child under the age of eighteen must have "a medically determinable

physical or mental impairment, which results in marked and severe functional limitations, and

which can be expected to result in death or which has lasted or can be expected to last for a

continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i).  The Social

Security Regulations provide a three-step sequential analysis to determine whether a child is

disabled and therefore eligible for SSI.  20 C.F.R. § 416.924(a)-(d); see Pollard v. Halter, 377

F.3d 183, 189 (2d Cir. 2004).  First, the ALJ is to consider whether the child is engaged in

"substantial gainful activity."  20 C.F.R. § 416.924(b).  Second, the ALJ considers whether the

child has a "medically determinable impairment(s) that is severe," which is defined as an

impairment that causes "more than minimal functional limitations."  Id. § 416.924(c).  Finally, if

the ALJ finds a severe impairment, he or she must then consider whether the impairment meets

or "medically" or "functionally" equals a disability listed in the regulatory "Listing of

Impairments."  Id. § 416.924(c), (d); see also id. at Part 404, Subpart P, App. 1.

To demonstrate functional equivalence, the child must exhibit a "marked" limitation in

two of six functional domains described in the regulations, or an "extreme" limitation in one of

the domains.  20 C.F.R. § 416.926a(a) (2017); see Pollard, 377 F.3d at 190.  The first five

domains consider the child's ability to acquire and use information, attend and complete tasks,

interact and relate with others, move about and manipulate objects, and care for himself.  20

C.F.R. § 416.926a(b)(1)(i)-(v) (2017).  The sixth domain considers the child's health and

physical well-being.  Id. § 416.926a(b)(1)(vi).

A child has a "marked" limitation when the impairment "interferes seriously with [the child's] ability to independently initiate, sustain, or complete activities."  20 C.F.R. § 416.926a(e)(2)(i) (2017).  "'Marked' limitation . . . means a limitation that is 'more than moderate' but 'less than extreme.'"  Id.  An "'extreme'" limitation exists when the impairment "interferes very seriously with [the child's] ability to independently initiate, sustain, or complete activities."  Id. § 416.926a(e)(3)(i).

III.  DISCUSSION

At step one, the ALJ found that C.L.S. had "not engaged in substantial gainful activity since May 9, 2017."  R. 12.  This finding is supported by substantial evidence as there is no evidence C.L.S. has ever been employed.

At step two, the ALJ determined that C.L.S. has two severe impairments: ADHD and speech and language delays.  R. 12.  The existence of both impairments is supported by substantial evidence.  Specifically, the record includes an evaluation note from Michelle A Bareis-Sotelo at Montefiore dated July 27, 2017, diagnosing C.L.S. with ADHD, R. 259-63; a treatment plan for ADHD from Evan Webster, a psychotherapist at Montefiore, R. 255-58; and notes from a pediatric examination performed by Dr. Marisela Gomez also diagnosing C.L.S. with ADHD, R. 274-77.  C.L.S.'s speech and language delay is also supported by Dr. Gomez's examination as Dr. Gomez also diagnosed C.L.S. with some speech delay.  R. 277.  Additionally, C.L.S.'s individualized education program ("IEP") from May 2018 classifies C.L.S.'s disability as a speech or language impairment and indicates he receives speech aid twice a week.  R. 171. The Teacher Questionnaire, dated January 9, 2019, and completed by Margret Snyder and Rose Capezuti, see R. 204, both of whom saw C.L.S. eight times a week for math, see R. 197, further states that C.L.S. received speech and language therapy twice a week, R. 201.

At step three, the ALJ found C.L.S. did not meet one of the listed impairments contained in 20 C.F.R. Part 404, Subpart P, Appendix 1.  R. 12.   The entirety of the ALJ's finding was as follows:

> The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.924, 416.925 and 416.926).

Id.  Thus, the ALJ did not indicate which, if any, Listings he considered in making this determination.  He also gave no explanation of his determination.

> We recognize, as one case has held, that
>
> "the ALJ's failure to discuss a listing is not reversible error if substantial evidence in the record indicates that plaintiff did not satisfy the listing." F.S.[ v. Astrue], 2012 WL 514944, at *14 [(N.D.N.Y. Feb. 15, 2012)] (citation omitted).  In other words, remand is only necessary if "there is significant probative evidence that a [plaintiff] meets the criteria for [one of the Listings]" such that the plaintiff is "owed a more substantive discussion of why she did not meet [a particular Listing]." Szarowicz v. Astrue, No. 11–CV–277S, 2012 WL 3095798, at *5 (W.D.N.Y. July 30, 2012) (emphasis in original) (citation omitted).

Ovitt v. Colvin, 2014 WL 1806995, at *5 (N.D.N.Y. May 7, 2014) (some alteration in original). In this case, however, the evidence suggesting that C.L.S. might meet Listing 112.11 is of sufficient substance that the ALJ was required to give an actual discussion of whether or not C.L.S. actually met this listing.

Listing 112.11, formerly titled "attention deficit hyperactivity disorder," was retitled "neurodevelopmental disorders" and requires proof as follows:

A. Medical documentation of the requirements of paragraph 1, 2, or 3:

1. One or both of the following:

a. Frequent distractibility, difficulty sustaining attention, and difficulty organizing tasks; or

b. Hyperactive and impulsive behavior (for example, difficulty remaining seated, talking excessively, difficulty waiting, appearing restless, or behaving as if being "driven by a motor").

2. Significant difficulties learning and using academic skills; or

3. Recurrent motor movement or vocalization.

AND

B. Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning . . .:

1. Understand, remember, or apply information . . . .

2. Interact with others . . . .

3. Concentrate, persist, or maintain pace . . . .

4. Adapt or manage oneself . . . .

20 C.F.R. Pt. 404, Subpt. P, App. 1-B2 § 112.11 (2017).

As previously explained, a child has a "marked" limitation when the impairment "interferes seriously with [the child's] ability to independently initiate, sustain, or complete activities."  20 C.F.R. § 416.926a(e)(2)(i) (2017).  "'Marked' limitation . . . means a limitation that is 'more than moderate' but 'less than extreme.'"  Id.  An "'extreme'" limitation exists when the impairment "interferes very seriously with [the child's] ability to independently initiate, sustain, or complete activities."  Id. § 416.926a(e)(3)(i).

Looking first to the criteria under "A" of Listing 112.11, the record contains evidence that C.L.S. is frequently distracted, and has difficulty sustaining attention and organizing tasks,

<u>see</u> R. 40-41, 171, 199, 242, 262.  As to the criteria under "B" of Listing 112.11, there is

evidence in the record that C.L.S. has a significant limitation in two of the areas.

With regard to understanding, remembering, or applying information, this "area of mental

functioning refers to the abilities to learn, recall, and use information to perform age-appropriate

activities."  20 C.F.R. Pt. 404, Subpt. P, App. 1-B2 § 112.00(E)(1) (2017).  Examples meant to

"illustrate the nature of th[is] area of mental functioning" include:

> Understanding and learning terms, instructions, procedures; following one- or
> two-step oral instructions to carry out a task; describing an activity to someone
> else; asking and answering questions and providing explanations; recognizing a
> mistake and correcting it; identifying and solving problems; sequencing multi-
> step activities; and using reason and judgment to make decisions.

<u>Id.</u>

The record shows that C.L.S. repeated both second and fifth grade.  R. 39, 240.  C.L.S.'s

February 2017 IEP explains that he "repeat[ed] the 5th grade due to low academic performance

in both [English Language Arts] and Math."  R. 240.  It also indicates that Suarez reported he

frequently forgets instructions.  R. 242.  His May 2018 IEP indicates he was "slightly below

grade level" in English Language Arts, R. 182, "struggl[ed] to meet grade level standards in

math," R. 171, and that he does better with extended time to complete tasks and with directions

being read aloud to him, R. 182.  C.L.S. is also reported to do best "when he has multiple

opportunities to explore new material."  R. 172.  The Teacher Questionnaire indicates C.L.S. had

"[a]n obvious problem" understanding oral instructions and providing oral explanations and

descriptions, R. 198, as well as carrying out single- and multi-step instructions, R. 199.  Finally,

Suarez testified that C.L.S. was passing his classes, but "with 70s and 65s."  R. 39.  Based on the

foregoing, we cannot discount the possibility, even if it is not great, that had the ALJ actually

analyzed the listing, the ALJ might have found a marked limitation in this area.

There is also some evidence to that C.L.S. has significant limitations in concentrating, persisting, or maintaining pace.  "This area of mental functioning refers to the abilities to focus attention on activities and stay on task age-appropriately."  20 C.F.R. Pt. 404, Subpt. P, App. 1-B2 § 112.00(E)(3) (2017).  Examples meant to "illustrate the nature of this area of mental functioning" include:

> Initiating and performing an activity that you understand and know how to do;
> engaging in an activity at home or in school at an appropriate and consistent pace;
> completing tasks in a timely manner; ignoring or avoiding distractions while
> engaged in an activity or task; changing activities without being disruptive;
> engaging in an activity or task close to or with others without interrupting or
> distracting them; sustaining an ordinary routine and regular attendance at school;
> and engaging in activities at home, school, or in the community without needing
> an unusual amount of rest.

Id.

That there is evidence to possibly support significant limitations is shown by the ALJ's finding on a related topic: that C.L.S. has a "marked limitation in attending and completing tasks."  R. 16.  We note also that C.L.S.'s IEP from May 2018 describes him as "unfocused" and indicates he would "call[] out often during class time and . . . struggle[d] to follow along," and that he "prefers to work in a small group of his peer[s]," but that "he is often distracted and off task unless the small group is teacher led."  R. 171.  Additionally, it explained that C.L.S. needed "a separate location for longer tasks and assessments to help him focus his attention on the given task."  R. 182.  C.L.S.'s IEP from February 2017 also states that Suarez reported C.L.S. was "easily distracted and ha[d] difficulty completing tasks."  R. 242.

In a case where an ALJ was similarly non-forthcoming as to why a claimant did not meet any of the Listings, the court remanded the case because there was "no discussion as to why [the ALJ] made this determination, what evidence he relied upon, and what evidence he rejected in making such a finding."  Morgan ex. rel. Morgan v. Chater, 913 F. Supp. 184, 188-89 (W.D.N.Y.

1996).  In <u>Morgan</u>, the ALJ  -- similar to the ALJ here --- included only one sentence as to why

the claimant did not meet the Listing, stating: "The findings in this case fail to meet or equal in

severity the requirements of the Listings."  <u>Id.</u>  <u>Morgan</u> found that the ALJ's "one-sentence

denial [was] insufficient to support the determination."  <u>Id.</u> at 189.

      Similarly, in light of the evidence in this case as to C.L.S.'s limitations, it was incumbent

on the ALJ to actually set forth an analysis of whether or not C.L.S. met Listing 112.11.  <u>See</u>

<u>Barone ex. rel. Z.B. v. Comm'r of Soc. Sec.</u>, 2020 WL 6579070, at *2-4 (W.D.N.Y. Nov. 10,

2020) (remand required where "the ALJ conclusively stated that Plaintiff did not meet the

entirety of the 112.11 Listing requirements, without reference to specific portions of the

requirements or evidence of the record" and "the ALJ failed to explicitly discuss the

requirements of criteria 'B' and apply the requisite evidence").

IV.  <u>CONCLUSION</u>

      For the foregoing reasons the Commissioner's motion for judgment on the pleadings

(Docket # 32) should be denied.  The case should be remanded for further proceedings consistent

with this Report and Recommendation.

<u>**PROCEDURE FOR FILING OBJECTIONS TO THIS<br>REPORT AND RECOMMENDATION**</u>

      Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil

Procedure, the parties have fourteen (14) days (including weekends and holidays) from service of

this Report and Recommendation to file any objections.  <u>See also</u> Fed. R. Civ. P. 6(a), (b), (d).  A

party may respond to any objections within 14 days after being served.  Any objections and

responses shall be filed with the Clerk of the Court.  Any request for an extension of time to file

objections or responses must be directed to Judge Failla.  If a party fails to file timely objections,

that party <u>will not be permitted to raise any objections to this Report and Recommendation on</u>

12

appeal.  See Thomas v. Arn, 474 U.S. 140 (1985); Wagner & Wagner, LLP v. Atkinson,

Haskins, Nellis, Brittingham, Gladd & Carwile, P.C., 596 F.3d 84, 92 (2d Cir. 2010).

Dated: October 21, 2021
        New York, New York


_____
GABRIEL W. GORENSTEIN
United States Magistrate Judge